# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### APPEAL NO. 19-1616

### JUAN J. ZÚÑIGA-BRUNO,

Petitioner–Appellant,

**v.**

### UNITED STATES OF AMERICA,

Respondent–Appellee.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEE

---

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

David C. Bornstein
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

Table of Authorities ........................................................................... ii

Jurisdictional Statement ..................................................................1

Statement of the Issue.....................................................................2

Statement of the Case .....................................................................3

Summary of the Argument.............................................................12

Argument........................................................................................13

    **I.    The government concedes that Zúñiga's 18 U.S.C. § 924(j) conviction and sentence are no longer valid.**

        Issue.......................................................................................13

        Legal Standard .....................................................................13

        Discussion.............................................................................13

    **II.   The Court should not accept Zúñiga's invitation to grant him a plenary resentencing as collateral relief because he has waived the argument and, in any event, he does not warrant it because vacating his invalid 18 U.S.C. § 924(j) conviction will not alter the dimensions of his current sentencing package.**

        Issue.......................................................................................17

        Legal Standard .....................................................................17

        Discussion.............................................................................19

Conclusion......................................................................................28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Casillas-Díaz v. Palau, 463 F.3d 77 (1st Cir. 2006) ..........................................20

David v. United States, 134 F.3d 470 (1st Cir. 1998) .................................17, 19

Davis v. United States, 417 U.S. 333 (1974).....................................................15

Dimott v. United States, 881 F.3d 232 (1st Cir. 2018).....................................17

Evans-García v. United States, 744 F.3d 235 (1st Cir. 2014) ....................13, 16

Greenlaw v. United States, 554 U.S. 237 (2008).........................................18, 20

Hall v. United States, Civ. No. RDB-14-1693, 2016 U.S. LEXIS 162347

   (D. Md. Nov. 23, 2016) ....................................................................................22

Hawkins v. United States, 706 F.3d 820 (7th Cir. 2013).................................25

In re Williams, 826 F.3d 1351 (11th Cir. 2016) .................................................18

Johnson v. United States, 576 U.S. 591 (2015)...........................................10–11

Sotirion v. United States, 617 F.3d 27 (1st Cir. 2010) .....................................16

United States v. Abreu, 952 F.2d 1458 (1st Cir. 1992) ...............................18, 27

United States v. Barnett, 986 F. Supp. 385 (W.D. La. 1997) ...........................22

United States v. Boney, 769 F.3d 153 (3d Cir. 2014).......................................21

United States v. Booker, 543 U.S. 220 (2005) ................................................... 9

United States v. Davis, 139 S. Ct. 2319 (2019)...............................11, 12, 14–16

United States v. DiDonna, 866 F.3d 40 (1st Cir. 2017) .......................18, 21, 27

United States v. Díaz, 670 F.3d 332 (1st Cir. 2012) .........................18, 20-21, 27

United States v. Francois, 715 F.3d 21 (1st Cir. 2013) .....................................18

United States v. Freeman, 818 F.3d 175 (5th Cir. 2016) ..................................28

United States v. Genao-Sánchez, 525 F.3d 67 (1st Cir. 2008) ..................18, 20

United States v. Hinkley, 803 F.3d 85 (1st Cir. 2015) .....................................26

United States v. Lara, 970 F.3d 68 (1st Cir. 2020) ..................................... 15-16

United States v. Martínez-Vives, 475 F.3d 48 (1st Cir. 2007) ........................23

United States v. Melendez-Rivera, 782 F.3d 26 (1st Cir. 2015) .....................26

United States v. Morales Sanabria, 645 F.3d 505 (1st Cir. 2011) ...................16

United States v. Morales-Madera, 352 F.3d 1 (1st Cir. 2003) ........................23

United States v. Ortiz, 966 F.2d 707 (1st Cir. 1992) ........................................23

United States v. Ovalle-Márquez, 36 F.3d 212 (1st Cir. 1994) .......................23

United States v. Rodríguez, 112 F.3d 26 (1st Cir. 1997) .................................24

United States v. Starks, 861 F.3d 306 (1st Cir. 2017) ................................13, 16

United States v. Takesian, 945 F.3d 553 (1st Cir. 2019) ..................................19

United States v. Tkhilaishvili, 926 F.3d 1 (1st Cir. 2019) ...............................18

United States v. Tsarnaev, 968 F.3d 24 (1st Cir. 2020) ...................................15

United States v. Turbides-Leonardo, 468 F.3d 34 (1st Cir. 2006)...................23

United States v. Turner, 501 F.3d 59 (1st Cir. 2007) ........................................15

United States v. Vega Molina, 407 F.3d 511 (1st Cir. 2005) .........................3, 9

United States v. Zannino, 895 F.2d 1 (1st Cir. 1990) ......................................20

## **FEDERAL STATUTES**

18 U.S.C. § 924(c) ......................................................................1, 10-11, 12, 14–16

18 U.S.C. § 924(j) ............................... 2, 5–6, 10, 12, 13–17, 19–21, 23–25, 27–28

18 U.S.C. § 1513 ..................................................................... 21-22, 24, 26-27

18 U.S.C. § 3553(a) ......................................................................................18

28 U.S.C. § 2253(a) .................................................................................... 1

28 U.S.C. § 2255 ...............................................1, 2, 3, 10-11, 12, 15-19, 24, 26-28

## **FEDERAL RULE**

Fed. R. App. P. 4(a)(1)(B) ................................................................................ 1

## **UNITED STATES SENTENCING GUIDELINES**

USSG § 1B1.2(a) ...........................................................................................26

USSG § 2A1.1 ........................................................................... 6, 25-26

USSG § 3D1.2 ....................................................................................... 6

USSG § 3D1.3 .........................................................................................6, 25

USSG § 3D1.4 ...........................................................................................25

USSG app. A ..............................................................................................26

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to consider petitioner-appellant Juan J. Zúñiga-Bruno's ("Zúñiga") motion collaterally attacking his sentence. 28 U.S.C. § 2255(a). After the court entered a final judgment denying the motion on April 22, 2019, Zúñiga filed a timely notice of appeal on June 4, 2019. Fed. R. App. P. 4(a)(1)(B) (providing that a party's notice of appeal must be filed within 60 days of entry of the judgment being appealed if one of the parties is the United States). This Court granted Zúñiga a certificate of appealability as to one issue: Whether conspiracy to commit Hobbs Act robbery is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). Order of Ct., dated Apr. 1, 2020. The Court has jurisdiction to consider this appeal. 28 U.S.C. § 2253(a).

The United States concedes that Zúñiga's 18 U.S.C. § 924(j)(1) conviction should be vacated under 28 U.S.C. § 2255. The Court will remand for resentencing when the vacatur may alter the dimensions of the sentencing package. Here, Zúñiga is serving a mandatory life sentence on another conviction, and vacating his § 924(j)(1) conviction will not alter his guideline sentencing range of life in prison. So does Zúñiga warrant a resentencing as collateral relief from the invalid conviction?

**STATEMENT OF THE CASE**

## I.    Zúñiga's Underlying Criminal Conduct[1]

Zúñiga and three other people — (1) Víctor Villega-Angulo ("Villega"), (2) Michelle Rodríguez-Matos, and (3) Evelyn Rodríguez-Santiago, Zúñiga's wife — decided that they would rob the Puerto Rico warehouse and offices of Fernández Editores ("FE"), a Mexican publisher of coloring books and other materials for children. The conspirators mistakenly believed that FE would sometimes keep large sums of money in its workplace.

On January 31, 1995, Zúñiga and his three co-conspirators went to FE's premises. Zúñiga and Villega entered the building and encountered three FE employees. Brandishing firearms, they ordered the employees to remain face

---

[1]    We have taken these facts from the Court's opinion affirming Zúñiga's convictions on direct appeal, *see United States v. Vega Molina*, 407 F.3d 511, 516–17 (1st Cir. 2005), and our jury summation at his trial, *see* DE 472 at 12–29 (Trial Tr., dated Aug. 1, 2002). We take from the latter only that (1) Zúñiga and Villega shot Morales and Ocasio Durán in the back of their heads during the robbery and (2) the conspirators later killed Muñoz by shooting him, too.

Although Zúñiga has filed an appellant's appendix, it contains only five docket entries from his underlying criminal proceedings and one docket entry from his 28 U.S.C. § 2255 proceedings. *See* Appellant's App. We, thus, often must cite the original record for relevant material. In our brief, citations of "DE" refer a docket entry in the underlying criminal proceedings: *United States v. Zúñiga-Bruno*, No. 99-CR-295 (D.P.R. filed Sept. 8, 1999). Citations of "App." refer to the appellant's appendix and of "AB" refer to his brief.

down on the floor. Zúñiga and Villega then searched the premises for FE's company funds, but found none. So they robbed the employees, taking their money, and shot two of them in the back of their heads, killing one (Alberto Morales) and seriously wounding the other (Benjamín Ocasio Durán). They kidnapped the third employee, FE manager Guillermo Muñoz, by taking his car keys, stuffing him in the trunk of his car, and driving off with him. The conspirators rendezvoused at Zúñiga's and Rodríguez-Santiago's residence, where they held Muñoz hostage for about a week. The conspirators recruited Lolo Falau and David Vega Molina to help them detain Muñoz.

Zúñiga contacted FE and demanded a ransom for Muñoz's safe return. FE contacted the FBI, and an FBI agent, posing as an FE executive, negotiated for Muñoz's release. Rodríguez-Matos's stepmother, however, worked for the telephone company, and Zúñiga had her pull the subscriber information for the FE executive's phone number. When the conspirators learned that the executive's number was registered to the FBI, Zúñiga and some of the other conspirators agreed that they should kill Muñoz. On February 5, 1995, they drove Muñoz to a remote location and shot him to death.

## II.     Relevant Procedural History

On September 8, 1999, a grand jury handed up a five-count Indictment

charging Zúñiga, among others, with: (1) conspiracy to commit Hobbs Act robbery; (2) an 18 U.S.C. § 924(j)(1) offense predicated only on the conspiracy to commit Hobbs Act robbery in Count One and murder of Alberto Morales; (3) carjacking of Guillermo Muñoz; (4) conspiracy to commit hostage taking resulting in the death of Muñoz; and (5) witness retaliation by means of the premeditated murder of Muñoz. (App. 5–14). On October 29, 1999, Zúñiga was arrested in connection with this case, and he was detained without bail pending trial. (DE 28; DE 30; DE 31; *see* DE 369 at 4, ¶6).

On July 10, 2002, Zúñiga, represented by counsel, proceeded to a trial before the Honorable Daniel R. Domínguez and a jury. (DE 281). In its final instructions to the jury, the district court told them that the predicate "crime of violence" for Zúñiga's 18 U.S.C. § 924(j) charge was conspiracy to commit Hobbs Act robbery and that, to convict him of it, they had to find that he had committed the conspiracy offense. (DE 328 at 38). The court also told the jury that the elements of the conspiracy offense were: (1) that the agreement set forth in the indictment to commit a Hobbs Act robbery had existed between at least two people; (2) that Zúñiga willfully joined in the agreement; and (3) that a conspirator committed an overt act in furtherance of it. (*Id.* at 34). On August 2, 2002, the jury convicted Zúñiga on all counts. (App. 15).

On January 3, 2003, a Probation Officer submitted to the district court a presentence report on Zúñiga. (DE 369). The report calculated that Zúñiga had a total offense level of 43 because the first degree murder cross-reference set forth in USSG § 2A1.1 (2002) applied to some of his counts of conviction—specifically mentioning his 18 U.S.C. § 924(j) offense and his hostage-taking conspiracy.[2] (*Id.* at 5–7, ¶¶ 12–33). The report also calculated that Zúñiga had a criminal history category of IV because his previous convictions warranted seven criminal history points. (*Id.* at 9, ¶ 37). The report stated that Zúñiga, therefore, had a guideline sentence of life imprisonment. (*Id.* at 10, ¶ 43).

The presentence report noted that in the interim between his criminal conduct in this case and his arrest for it, Zúñiga and two other armed men had entered the home of a family in New Rochelle, New York, shortly before

---

[2]     The presentence report divided Zúñiga's counts of conviction into two groups of closely related counts under USSG § 3D1.2 (2002). (DE 369 at 5, ¶ 12). The report correctly explained that the offense level that applied to each group under USSG § 3D1.3 (2002) was the offense level of the most serious count in the group. (*Id.* at 5, ¶ 13). And the report stated that, after applying the first degree murder cross-reference in USSG § 2A1.1 (2002), the 18 U.S.C. § 924(j)(1) offense in the first group and the hostage-taking conspiracy in the second group both had a total offense level of 43, the highest level possible under the guidelines. (*Id.* at 5, ¶ 13; *id.* at 6, ¶¶ 14, 20; *id.* at 7, ¶ 33). The report did not mention whether the first degree murder cross-reference applied to any of Zúñiga's other counts of conviction. (*See id.* at 5–7, ¶¶ 12–33).

midnight, handcuffed the husband and wife, kidnapped their one year-old infant, and absconded in the family car with several valuable objects. (DE 369 at 8, ¶ 16). On the next day, Zúñiga called the husband from Puerto Rico, threatening to kill the infant if the family did not pay him $500,000. (*Id.*). The husband explained to the FBI that Zúñiga believed that the husband owed him a debt related to drug-trafficking activities. (*Id.*). About one week after the kidnapping, the police apprehended Rodríguez-Santiago, Zúñiga's wife, in Puerto Rico, found her in possession of the kidnapped infant, and arrested her. (*Id.*). The report also noted that while Zúñiga was detained pending trial in this case, he and two other inmates assaulted three fellow inmates using dangerous weapons—i.e., socks containing padlocks. (*Id.* at 9, ¶ 36).

The presentence report mentioned that in the former case Zúñiga had pleaded guilty to kidnapping in the federal district court for the Southern District of New York and received a sentence of sixty-six months in prison. (DE 369 at 8, ¶ 16). In the latter case, the report noted, Zúñiga had been found guilty of offenses related to the prison assault and was awaiting sentencing before the federal district court in Puerto Rico. (*Id.* at 9, ¶ 36).

The presentence report further revealed that Zúñiga had two pending criminal matters in Puerto Rico: One involved three first-degree murder and

thirteen gun charges stemming from an incident on May 24, 1994; the other involved charges indicating that Zúñiga "generally acted as the second in command" of a continuing criminal enterprise engaging in drug trafficking and murder. (DE 369 at 9–10, ¶¶ 38–39). The report also revealed that on July 3, 2002—the week before Zúñiga proceeded to trial in this case—Puerto Rico dismissed two prosecutions against him: One involved first-degree murder, kidnapping, and gun charges stemming from an incident on April 9, 1994; the other involved two second-degree murder and seven firearms charges stemming from an incident on March 12, 1994. (*Id.* at 10, ¶¶ 40–41).

The presentence report declared that the maximum authorized prison sentences for Zúñiga's convictions were: 240 months on Count One; life on Count Two; 180 months on Count Three; and "a fixed life imprisonment" on Counts Four and Five. (*Id.* at 10, ¶ 42). The Probation Officer remarked that he had furnished the report to Zúñiga more than three weeks earlier and had not received any written objections from him. (*Id.* at 16).

On May 23, 2003, the district court sentenced Zúñiga to the maximum term of imprisonment on each of his convictions: 240 months on Count One; 180 months on Count Three; and the rest of his natural life on Counts Two, Four, and Five. (App. 16–20). The court noted without objection, both before

and after pronouncing that sentence, that Counts Four and Five each carried a mandatory sentence of life imprisonment. (DE 498 at 6, 28, 39). The court also stated that the "one undoubtable truth about this case" is that Zúñiga's offenses were "very, very heinous." (*Id*. at 39). The court then explained that it had nonetheless decided that Zúñiga's sentences should run concurrently, instead of consecutively, because he had received multiple "life sentences." (*Id*.). The court told him that the time he had already spent in federal custody in connection with this case would be credited to his sentence. (*Id*. at 38).

On direct appeal, the Court affirmed Zúñiga's convictions, but vacated his sentence of life imprisonment on Count Four because that hostage-taking conspiracy had—for ex post facto reasons—a maximum legally authorized sentence of sixty months in prison. *United States v. Vega Molina*, 407 F.3d 511, 524–26 (1st Cir. 2005). Although the Court remanded for resentencing, *id.* at 535, the district court apparently saw no need to reconsider its sentencing package for Zúñiga—even though the Supreme Court had just held that the sentencing guidelines were no longer mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). The district court on remand exercised its discretion to correct the sentence on Count Four without a resentencing. (*See* DE 521). It, in particular, reduced the sentence to sixty months in prison—the legally

correct maximum term — leaving the other sentences untouched. (App. 22). It then entered an amended judgment reflecting the correction. (*See id.*).

Almost a dozen years later, on June 22, 2017, Zúñiga, represented by counsel, moved the district court to vacate his 18 U.S.C. § 924(j)(1) conviction and sentence and to resentence him under 28 U.S.C. § 2255. (App. 26–38). He maintained that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), invalidating 18 U.S.C. § 924(e)(2)(B)(ii)'s residual clause as unconstitutionally vague, had invalidated § 924(c)(3)(B)'s residual clause as well. (App. 27–32). He argued that his § 924(j) conviction's predicate offense of conspiracy to commit Hobbs Act robbery no longer qualified as a "crime of violence" because it does not have as an element the use, attempted use, or threatened use of physical force. (App. 36–37).

On September 13, 2017, the United States opposed Zúñiga's motion for collateral relief on the merits. We argued that *Johnson* did not invalidate 18 U.S.C. § 924(c)(3)(B)'s residual clause. United States' Response in Opposition 3–5, *Zúñiga-Bruno v. United States*, No. 17-cv-1849 (D.P.R. Sept. 13, 2017). We argued next that conspiracy to commit Hobbs Act robbery remains a "crime of violence" under § 924(c)(3)(A)'s force clause. *Id.* at 5–7. And we contended that § 924(c)(3)(B)'s residual clause is not unconstitutionally vague. *Id.* at 7–

13. Zúñiga did not reply to our opposition.

On April 22, 2019, Judge Domínguez denied Zúñiga's § 2255 motion on the ground that conspiracy to commit Hobbs Act robbery is still a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)'s force clause. Opinion and Order 4–5, *Zúñiga-Bruno v. United States*, No. 17-cv-1849 (D.P.R. Apr. 22, 2019). On the same day, the district court entered judgment against Zúñiga and denied him a certificate of appealability ("COA"). Judgment, *Zúñiga-Bruno v. United States*, No. 17-cv-1849 (D.P.R. Apr. 22, 2019).

This timely appeal followed. (App. 4). Zúñiga moved this Court *pro se* multiple times for a COA. *See Pro Se* Mot. for COA, dated Oct. 7, 2019; Suppl. *Pro Se* Mot. for COA, dated Nov. 19, 2019. Zúñiga, represented by counsel, also moved it for a COA. *See* Mot. for COA, dated Mar. 19, 2020.

On June 24, 2019, the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019), invalidated 18 U.S.C. § 924(c)(3)(B)'s residual clause.

On April 1, 2020, this Court granted Zúñiga a COA as to whether, after *Johnson* and *Davis*, "conspiracy to commit Hobbs Act robbery, . . . the offense undergirding [his] conviction under 18 U.S.C. § 924(c) and (j), constitutes a 'crime of violence' under § 924(c)(3)(A)." Order of Ct., dated Apr. 1, 2020.

The United States concedes that Zúñiga's 18 U.S.C. § 924(j) conviction is invalid because it is predicated exclusively on an offense—conspiracy to commit Hobbs Act robbery—that no longer qualifies as a "crime of violence" under § 924(c)(3) following the Supreme Court's invalidation of that statute's residual clause in *United States v. Davis*, 139 S. Ct. 2319 (2019). We, moreover, agree with Zúñiga that, under the circumstances, his § 924(j) conviction and sentence should be vacated on remand. (*See* AB 31).

Zúñiga, however, asks the Court to "vacate the sentences imposed on [his] remaining counts" as well and to "remand the case for resentencing on the remaining counts." (AB 21, 31). But there is no reason to award him that additional relief. Zúñiga waives the argument for such relief by failing to develop it in his opening brief. He, in any event, does not warrant it because vacating his § 924(j) conviction will not alter the dimensions of his sentencing package. The district court correctly imposed a mandatory sentence of life imprisonment on another count. He, in other words, must spend the rest of his life in prison. Vacating his § 924(j) conviction, moreover, will not alter his guideline sentencing range of life in prison. It, therefore, is not appropriate to award him plenary resentencing as 28 U.S.C. § 2255 relief.

### I. The government concedes that Zúñiga's 18 U.S.C. § 924(j) conviction and sentence are no longer valid.

**Issue:**

The United States concedes that Zúñiga's 18 U.S.C. § 924(j) conviction and sentence are no longer valid. We ask the Court to accept our concession and resolve the issue on this basis.

**Legal Standard:**

The Court normally accepts government concessions, except when the government's position "is clearly erroneous and has been rejected by a lower court." *Evans-García v. United States*, 744 F.3d 235, 239 (1st Cir. 2014); *see, e.g.*, *United States v. Starks*, 861 F.3d 306, 317 & n.11 (1st Cir. 2017) (accepting the government's concession after determining that "[n]o precedent plainly calls into question the correctness of the government's concession").

**Discussion:**

The United States concedes that Zúñiga's 18 U.S.C. § 924(j) conviction is invalid because it is predicated exclusively on the "crime of violence" of conspiracy to commit Hobbs Act robbery. When the grand jury charged him with violating § 924(j), the indictment identified one and only one predicate

offense: Conspiracy to commit Hobbs Act robbery. (*See* App. 9). The United States then prosecuted him for violating § 924(j) based solely on the theory that his predicate offense was conspiracy to commit Hobbs Act robbery. And at trial, the district court instructed the jury to consider only one predicate offense in determining his guilt—once again, conspiracy to commit Hobbs Act robbery—and to convict him only if they found that he had murdered the victim with a firearm "during and in relation to the commission of that [conspiracy]." (DE 328 at 38). Moreover, when the court instructed the jury on the elements of a Hobbs Act conspiracy, none of them involved the use, attempted use, or threatened use of physical force. (*See id.* at 34–35).

The record, therefore, is perfectly clear that the only predicate offense that anyone had contemplated in charging, trying, and convicting Zúñiga of violating 18 U.S.C. § 924(j) was conspiracy to commit Hobbs Act robbery.[3]

Conspiracy to commit Hobbs Act robbery, moreover, no longer counts as a "crime of violence" under 18 U.S.C. § 924(c)(3) after the Supreme Court invalidated § 924(c)(3)(B)'s residual clause in *United States v. Davis*, 139 S. Ct.

---

[3]    The United States' focus in pursuing this particular 18 U.S.C. § 924(j)(1) charge—at a time when the predicate offense was valid—does not mean or suggest that Zúñiga did not commit another § 924(j)(1) offense in the course of the Alberto Morales and Guillermo Muñoz murders.

2319 (2019)—a new rule that, we concede, applies retroactively. This Court has held that conspiracy to commit Hobbs Act robbery constitutes a "crime of violence" under § 924(c)(3)(B)'s residual clause. *See United States v. Turner*, 501 F.3d 59, 67–68 (1st Cir. 2007). But *Davis* "leaves only one potential path for treating [§ 924(j)] predicates as crime-of-violence offenses: the elements clause, a provision . . . that sweeps in crimes having 'as an element the use, attempted use, or threatened use of physical force.'" *United States v. Tsarnaev*, 968 F.3d 24, 99 (1st Cir. 2020) (quoting 18 U.S.C. § 924(c)(3)(A)), *petition for cert. filed*, No. 20-443 (Oct. 6, 2020). And "conspiring to commit a violent act does not necessarily have as an element the use, attempted use, or threatened use of physical force." *Id.* at 104; *see United States v. Lara*, 970 F.3d 68, 74 (1st Cir. 2020) (accepting the United States' concession "that in consequence of *Davis*, conspiracy to commit Hobbs Act robbery does not qualify as a 'crime of violence' under § 924(c), because what remains of the 'crime of violence' definition does not encompass that offense"). Zúñiga's § 924(j) conviction is, therefore, no longer valid—a circumstance warranting relief under 28 U.S.C. § 2255. *See Davis v. United States*, 417 U.S. 333, 346–47 (1974).

This Court has accepted on direct appeal the United States' concession that "conspiracy to commit Hobbs Act robbery does not qualify as a 'crime

of violence' under § 924(c)" after the Supreme Court in *Davis* "struck down the 'residual clause' as unconstitutionally vague." *Lara*, 970 F.3d at 74. We now ask the Court to accept the same concession here and resolve the issue on that ground.[4] *See, e.g.*, *Starks*, 861 F.3d at 317 ("We accept this concession and do not decide the issue."); *United States v. Morales Sanabria*, 645 F.3d 505, 512 (1st Cir. 2011) ("We accept the government's concession and thus do not reach the merits of Morales's arguments on this point."); *cf. Evans-García*, 744 F.3d at 239 (observing that "[c]ourts are generally limited to addressing the claims and arguments advanced by the parties").

In light of our concession, we ask the Court to (1) vacate the district court's judgment denying Zúñiga 28 U.S.C. § 2255 relief and (2) remand with instructions to the district court to grant him § 2255 relief by (3) amending his underlying judgment of conviction by striking his § 924(j) conviction and sentence. As we explain in the next section, Zúñiga is not entitled to any further or additional collateral relief under his motion "to vacate, set aside or correct the [invalid § 924(j)] sentence." *See* 28 U.S.C. § 2255(a).

---

[4]     The United States is conceding error here because we opted to oppose Zúñiga's 28 U.S.C. § 2255 motion only on the merits, waiving our procedural defenses, including Zúñiga's procedural default of his challenge. *See Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).

**II.    The Court should not accept Zúñiga's invitation to grant him a plenary resentencing as collateral relief because he has waived the argument and, in any event, he does not warrant it because vacating his invalid 18 U.S.C. § 924(j) conviction will not alter the dimensions of his current sentencing package.**

**Issue:**

Zúñiga asserts—without explanation—that after the Court vacates his invalid conviction and sentence, it should "vacate the sentences imposed on the remaining counts" as well and "remand the case for resentencing on the remaining counts." (AB 21, 31). The United States, by contrast, contends that Zúñiga does not warrant such further relief. The issue, therefore, is whether this Court should instruct the district court to provide Zúñiga with a plenary resentencing after it vacates his invalid conviction and sentence.

**Legal Standard:**

"The burden is on the petitioner to make out [his] case for section 2255 relief." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *accord Dimott v. United States*, 881 F.3d 232, 240 (1st Cir. 2018) (stating that this Court "has long held that federal post-conviction petitioners bear the burden of proof and production under § 2255"). Where, as here, a case involves a multicount indictment "and a successful attack by a defendant on some but not all of the counts of conviction," an appeals court "*may* vacate the entire sentence on

all counts so that, on remand, the trial court can reconfigure the sentencing plan to assure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008) (emphasis added). This Court has said that it will exercise its discretion to "remand [a] case for resentencing" when it "find[s] that the vacated counts may 'alter the dimensions of the sentencing "package."'" *United States v. Díaz*, 670 F.3d 332, 344 (1st Cir. 2012) (quoting *United States v. Genao-Sánchez*, 525 F.3d 67, 71 (1st Cir. 2008)); *accord United States v. Tkhilaishvili*, 926 F.3d 1, 21 (1st Cir. 2019) (explaining that resentencing is "appropriate" where vacating a count "may 'alter the dimensions of the sentencing "package"'" (quoting *Genao-Sánchez*, 525 F.3d at 71)). But when the Court concludes that vacating a count will not alter "the district court's calculation of [the defendant's] overall sentencing package," the Court will simply vacate it without ordering resentencing. *See United States v. DiDonna*, 866 F.3d 40, 52 (1st Cir. 2017) (alteration in original) (quoting *United States v. Francois*, 715 F.3d 21, 34 (1st Cir. 2013)); *see also United States v. Abreu*, 952 F.2d 1458, 1472 (1st Cir. 1992).[5]

---

[5]     Some courts will even decline to review a conviction under 28 U.S.C. § 2255 where, as here, vacating the conviction would not alter the length of the actual sentence the defendant will serve. *See In re Williams*, 826 F.3d 1351, 1356–57 (11th Cir. 2016) (applying the concurrent-sentence doctrine). The

**Discussion:**

As an initial matter, Zúñiga has waived the contention that this Court, in granting him relief under 28 U.S.C. § 2255 on the ground that his 18 U.S.C. § 924(j) conviction and sentence are no longer valid, should also vacate the final, valid, and uncontested sentences on his other convictions and remand for a plenary resentencing. Although he tells the Court in his opening brief that he is seeking this relief (AB 21, 31), he completely fails to shoulder his "burden . . . to make out [his] case for [this] relief," *see David*, 134 F.3d at 474. He merely asserts—without any explanation or citation to authority—that after the Court "vacate[s] and dismiss[es] the conviction and life sentence on Count Two [i.e., the § 924(j) count]," the Court should "vacate the sentences imposed on the remaining counts, and remand the case to the district court

_____

United States believes that the Court has the discretion to decline to review Zúñiga's 18 U.S.C. § 924(j) conviction for this very reason. *See United States v. Takesian*, 945 F.3d 553, 565 n.10 (1st Cir. 2019) ("[T]he concurrent-sentence doctrine lets circuit courts bypass challenges to a conviction's correctness if the defendant got a concurrent sentence on another valid count—a caveat being that he must suffer no 'adverse collateral consequence' from the unreviewed conviction."). It is clear, moreover, that Zúñiga would not suffer any adverse consequences from the Court declining to review his 18 U.S.C. § 924(j) conviction and sentence because (1) he must serve a mandatory life sentence on Count Five no matter what happens here and (2) any adverse collateral consequences that might follow from his § 924(j) conviction will follow, in any event, from his other final convictions.

with instructions that [he] be resentenced." (AB 31; *see id.* at 26 ("[T]his Court can—and should—invalidate [his] conviction on Count Two and remand the case for resentencing on the remaining counts")).

Zúñiga does not reference this Court's caselaw stating it will "choose" to "remand [a] case for resentencing" after vacating some of its convictions if and when it "find[s] that the vacated counts may 'alter the dimensions of the sentencing "package."'" *Díaz*, 670 F.3d at 344 (quoting *Genao-Sánchez*, 525 at 71); *see Greenlaw*, 554 U.S. at 253 (stating that an appeals court "may vacate the entire sentence on all counts" after vacating only some of the convictions, *not* that the court *must* do so). Nor does he explain why vacating his 18 U.S.C. § 924(j) conviction might alter the dimensions of his sentencing package. It, however, "is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). And it is especially unfair to the government to request expansive relief from an eighteen year-old conviction without providing us with the materials we need to respond intelligently to it. *See Casillas-Díaz v. Palau*, 463 F.3d 77, 84 (1st Cir. 2006) ("[I]f a party does not put enough stock in an argument to flesh it out, a reviewing court should normally dismiss the

argument out of hand. To do otherwise would be unfair both to the adverse party and to the court itself." (internal citation omitted)). The Court should treat Zúñiga's undeveloped argument "as waived." *Id.*

Zúñiga, in any event, does not warrant the additional relief of vacating all of his other sentences and ordering a plenary resentencing. Vacating his invalid 18 U.S.C. § 924(j) conviction simply does not alter the dimensions of his sentencing package. *See Díaz*, 670 F.3d at 344; *see also DiDonna*, 866 F.3d at 52. That is because Zúñiga properly received a mandatory sentence of life imprisonment on Count Five (DE 498 at 39), his conviction under 18 U.S.C. § 1513(a)(1)(B) of witness retaliation by means of the premeditated murder of Guillermo Muñoz (App. 13–14). *See* 18 U.S.C. § 1513(a)(2)(A) (providing that "[t]he punishment for an offense under this subsection is . . . in the case of a killing, the punishment provided in sections 1111 and 1112"); *id.* § 1111(a) (providing that every "premeditated killing" is "murder in the first degree"); *id.* § 1111(b) (providing that "[w]hoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life");[6] *see also United States v. Boney*, 769 F.3d 153, 156 (3d Cir. 2014) (stating that the

---

[6]     The quoted portions of these statutes have remained exactly the same since Zúñiga committed this retaliation-and-murder offense in 1995.

offense of witness retaliation by means of intentional murder is "punishable by life imprisonment or death"); *United States v. Barnett*, 986 F. Supp. 385, 402 (W.D. La. 1997) ("If the defendants were to retaliate against a government witness, . . . they would face a possible sentence of death or life imprisonment under 18 U.S.C. § 1513, if the person involved is killed in a premeditated fashion."); *Hall v. United States*, Civ. No. RDB-14-1693, 2016 U.S. LEXIS 162347, at *11 (D. Md. Nov. 23, 2016) ("As to Count III, retaliation against a witness by murder in violation of 18 U.S.C. § 1513(a)(1)(B) and (2), that offense required a sentence of life imprisonment."). Because this life sentence is mandated by statute, Zúñiga cannot escape it by means of resentencing.

Zúñiga even affirmed at his original sentencing that the district court was required to sentence him to life imprisonment on Count Five. When the court asked him whether he was aware that it "ha[d] no discretion other than to place a life sentence" on his conviction of Count Five, he answered, "Yes." (DE 498 at 6; *see id.* at 28 (agreeing that he faced a "mandatory life" sentence on Count Five)). And when the court reiterated *after* imposing a life sentence on Count Five that it had to impose that sentence "by mandate of law," he did not object. (*See id.* at 39–40). Zúñiga, moreover, did not object to his pre-

sentence report when it declared that "[s]tatutory provisions require a fixed life imprisonment sentence as to [Count Five]." (*See* DE 369 at 10, ¶ 42; *id.* at 16). As to Count Two, his 18 U.S.C. § 924(j) conviction, the report said instead that it merely carried a "statutory maximum term of imprisonment . . . [of] life imprisonment." (*Id.* at 10, ¶ 42). He, thus, long ago waived any objection he may have had to the fact that he is statutorily obligated to serve a sentence of life imprisonment on Count Five. *See, e.g.*, *United States v. Martínez-Vives*, 475 F.3d 48, 55 (1st Cir. 2007) ("[B]ecause Martínez did not object to the PSR, and did not ask at sentencing for any of the reductions that he now claims the court should have provided, he waived these arguments."); *United States v. Turbides-Leonardo*, 468 F.3d 34, 38 (1st Cir. 2006) (explaining that there is "a powerful case for waiver" where a defendant fails to object to a presentence report within fourteen days of its disclosure because D.P.R. Local Rule 132 provided—then as now—that the failure to object "waives any objection"); *United States v. Morales-Madera*, 352 F.3d 1, 14 (1st Cir. 2003) (stating that "[i]n [the] criminal sentencing context, arguments not addressed to the trial court at the appropriate time are deemed to be abandoned" (second alteration in original) (quoting *United States v. Ortiz*, 966 F.2d 707, 717 (1st Cir. 1992))); *see also United States v. Ovalle-Márquez*, 36 F.3d 212, 228 n.10 (1st Cir. 1994).

Because vacating Zúñiga's 18 U.S.C. § 924(j) conviction will not change the fact that he must serve a mandatory life sentence on another conviction (i.e., witness retaliation by means of premeditated murder), the Court should not order—as his *collateral relief* from a single invalid conviction—a plenary resentencing. *See, e.g.*, *United States v. Rodríguez*, 112 F.3d 26, 31 (1st Cir. 1997) (reserving whether courts possess the authority to grant such collateral relief under 28 U.S.C. § 2255 where, as here, the rest of the defendant's sentencing package does not display an "interdependent" relationship with the vacated count). The result of any resentencing would—or, at least, should—be that Zúñiga is once again sentenced on Count Five to a mandatory term of life in prison pursuant to 18 U.S.C. §§ 1513(a)(2)(A) and 1111(b).

Zúñiga, moreover, first entered federal custody in connection with this case on October 29, 1999—i.e., more than twenty years ago—and, it appears, he "has remained" in custody ever since. (DE 369 at 4, ¶ 6). But aside from his life sentences—i.e., his mandatory life sentence on Count Five, and the life sentence on Count Two that we are conceding should be vacated—the next longest sentence he received was the twenty-year term on Count One. (App. 22). And the district court, as noted, sentenced him to the maximum term of imprisonment on each of his convictions, imposing the sentences to

run "concurrently." (*Id.*). It, thus, appears that no purpose would be served by vacating all of his sentences—including his final, valid sentences on his unchallenged convictions—for a resentencing. *See Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013) ("Resentencing is not as heavy a burden for a district court as a complete retrial, but it is a burden . . . .").

Vacating Zúñiga's 18 U.S.C. § 924(j) conviction will also not alter his guidelines sentencing range of life imprisonment. Zúñiga, as we also noted, originally had a total offense level of 43 based on the fact that the first degree murder cross-reference in USSG § 2A1.1 applied to some of his convictions. (*See* DE 369 at 6–7, ¶¶ 14–33). He, however, actually needed the first degree murder cross-reference to apply to only one of his convictions to warrant a total offense level of 43. *See* USSG §§ 2A1.1 (providing a base offense level of 43 for first degree murder); 3D1.3(a) (providing that a group of counts has the offense level that applies to "the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group"); 3D1.4 (providing that the "combined offense level" for multiple counts is at least "the offense level applicable to the Group with the highest offense level").[7]

---

[7] The quoted parts of these sentencing guidelines are exactly the same in both the November 1, 2002, and the November 1, 2018, editions of the *U.S.*

And, if he were resentenced today, the first degree murder cross-reference would still apply to at least one of his convictions—i.e., of witness retaliation by means of premeditated murder in violation of 18 U.S.C. § 1513(a)(1)(B). *See* USSG § 1B1.2(a) (2018) (explaining that one must "[r]efer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction," that applies to an offense of conviction); *id.* app. A (2018) (providing that the first degree murder cross-reference, USSG § 2A1.1, applies to convictions of 18 U.S.C. § 1513). He, thus, still has a total offense level of 43 and guidelines sentencing range of life imprisonment. *United States v. Hinkley*, 803 F.3d 85, 90 (1st Cir. 2015) (stating that when a defendant receives a "total offense level [of] 43," which is the guidelines' "maximum offense level," "the guideline sentence based on his offense level [i]s life imprisonment"). Under the circumstances, remanding for a resentencing would not be proper under 28 U.S.C. § 2255,

---

*Sentencing Guidelines Manual*. The presentence report for Zúñiga's original sentencing used the 2002 edition of the Guidelines. (*See* DE 369 at 5, ¶ 12). And if Zúñiga were to be resentenced, the district court would use the 2018 edition of the Guidelines. *See United States v. Melendez-Rivera*, 782 F.3d 26, 31 n.4 (1st Cir. 2015) ("[W]hen an appellate court vacates a sentence and remands for sentencing, the resentencing court normally is to apply the version of the guidelines in effect at the time of resentencing.").

which authorizes courts to grant only the relief that would be "appropriate" to "vacate, set aside or correct the sentence." *See* 28 U.S.C. § 2255(a), (b).

In sum, there is no reason to vacate all of Zúñiga's sentences, including the final, valid sentences on his unchallenged convictions, and remand for a plenary resentencing. Zúñiga has waived his argument for such additional relief by failing to develop it in his opening brief. He, in any event, does not warrant it because vacating his invalid 18 U.S.C. § 924(j) conviction—and its concurrent life sentence—will not change the dimensions of his sentencing package. *See, e.g., DiDonna*, 866 F.3d at 52; *Díaz*, 670 F.3d at 344; *Abreu*, 952 F.2d at 1472. He must still receive and serve a mandatory life sentence on his 18 U.S.C. § 1513(a)(1)(B) conviction, and he would still receive a guidelines sentencing range of life imprisonment because the first degree murder cross-reference applies to his unchallenged § 1513(a)(1)(B) conviction. Vacating all of his sentences and remanding for plenary resentencing would only impose an unnecessary burden and expense on the district court and parties.

The Court should not order the district court to vacate all of Zúñiga's sentences and resentence him under 28 U.S.C. § 2255. It should instruct the court, at most, to grant Zúñiga collateral relief by amending his underlying judgment of conviction by striking his invalid conviction and sentence. *See*

*United States v. Freeman*, 818 F.3d 175, 179 & n.3 (5th Cir. 2016) (explaining that striking an invalid conviction is appropriate § 2255 relief when vacating the conviction will not change the defendant's total sentence).

CONCLUSION

The United States concedes that Zúñiga's 18 U.S.C. § 924(j) conviction and sentence are no longer valid. The Court should vacate the district court's judgment denying Zúñiga relief under 28 U.S.C. § 2255 and remand with instructions to grant him collateral relief by striking his invalid conviction and sentence from his underlying judgment of conviction.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 26th day of January, 2021.

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

David C. Bornstein
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### Certificate of Compliance with Rule 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because:

   ☑ the brief contains <u>6,351</u> words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because:

   ☑ the brief has been prepared in a proportionally spaced typeface and, except for emphases, in a plain, roman style using <u>Book Antiqua</u> in <u>14 point</u>, *or*

   ☐ the brief has been prepared in a monospaced typeface using _____ with _____.

Dated: January 26, 2021        /s/David C. Bornstein
                                        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 26, 2021, I electronically filed the

above brief with the court's clerk and thereby electronically served it on the

appellant, Juan J. Zúñiga-Bruno, through his counsel, who is an ECF Filer.

/s/David C. Bornstein
Assistant United States Attorney